UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE A2P SMS<br>ANTITRUST LITIGATION | Master File 12 CV 2656 (AJN) |
| THIS DOCUMENT RELATES TO:<br>All Actions | |

**REPLY MEMORANDUM OF LAW OF
DEFENDANT WIRELESS MEDIA CONSULTING, INC.
<u>IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION</u>**

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
*Attorneys for Defendant Wireless Media
Consulting, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    PLAINTIFFS SHOULD ABIDE BY THE
ARBITRATION PROVISION TO WHICH THEY AGREED ............................ 2

    II.    THE DOCTRINE OF UNCLEAN HANDS DOES NOT APPLY
HERE, SO PLAINTIFFS ARE ESTOPPED FROM CONTESTING
WMC'S INVOCATION OF THE ARBITRATION PROVISION ....................... 2

    III.    WMC IS A THIRD-PARTY BENEFICIARY ......................................................... 4

    IV.    THE ARBITRATION CLAUSES ARE ENFORCEABLE ................................... 6

    V.    ALL PROCEEDINGS IN THIS COURT SHOULD BE STAYED
IF ANY OF THE CLAIMS PROCEED TO ARBITRATION .............................. 6

CONCLUSION .................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alghanim v. Alghanim*,
   828 F. Supp. 2d 636 (S.D.N.Y. 2011) ..................................................................................6

*Bank of America v. Musselman,*
   240 F. Supp. 2d 547 (E.D. Va. 2003) ...................................................................................5

*Bostic v. Global Strategies Grp., Inc.*,
   Civ. No. 96-1090-A, 1996 WL 729853 (E.D. Va. Nov. 22, 1996) ........................................5

*Buchanan v. Buchanan*,
   2011 Va. Cir. LEXIS 59 (Va. Cir. Ct. May 4, 2011) ............................................................3

*Cline v. Berg*,
   273 Va. 142 (2007) ...............................................................................................................3

*Cmty. Bank of Mississippi v. Stuckey*,
   52 So. 3d 1179 .....................................................................................................................3

*Cohen v. Treuhold Capital Grp., LLC (In re Cohen)*,
   422 B.R. 350 (E.D.N.Y. 2010) .............................................................................................2

*Copenhaver v. Rogers*,
   238 Va. 361 (1989) ...............................................................................................................5

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ..............................................................................................................6

*Environmental Staffing Acquisition Corp. v. B & R Construction Management, Inc.*,
   283 Va. 787 (2012) ...............................................................................................................5

*Gibson v. Medical Facilities of America, Inc.*,
   80 Va. Cir. 56 (2010) ............................................................................................................5

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
   82 F. Supp. 2d 126 (S.D.N.Y. 1999) ....................................................................................4

*Hard Rock Cafe International (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
   808 F. Supp. 2d 552 (S.D.N.Y. 2011) ..................................................................................7

*Motorola Credit Corp. v. Uzan*,
   274 F. Supp. 2d 481 (S.D.N.Y. 2003), *affirmed in part, vacated in part by*, 388 F.3d
   39 (2d Cir. 2004) ..................................................................................................................3

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'Ship*,
   698 F. Supp. 2d 602 (E.D. Va. 2010) ...................................................................................3

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
   542 F.3d 354 (2d Cir. 2008)............................................................................................3, 4

*Stechler v. Sidley, Austin Brown & Wood, L.L.P.*,
   382 F. Supp. 2d 580 (S.D.N.Y. 2005)..................................................................................7

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).............................................................................................................6

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 3 (the "FAA") ........................................................................1

Defendant Wireless Media Consulting, Inc. d/b/a WMC Global, sued herein as WMC Global, Inc. ("WMC"), respectfully submits this reply memorandum of law in further support of its motion to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 (the "FAA"), of all claims asserted against WMC by Plaintiffs TextPower, Inc. ("TextPower"), Club Texting, Inc. ("Club Texting"), and iSpeedbuy LLC ("iSpeedbuy"), on behalf of themselves and all others similarly situated. WMC also submits this reply in further support of its request to stay all proceedings against it if the Court grants any of the motions to compel arbitration.

## Preliminary Statement

WMC's motion to compel arbitration should be granted because Plaintiffs have not offered a persuasive reason to deny it. First, their argument that the choice of law provision directing the arbitrators to follow Virginia law reflects the parties' intention to carve all non-Virginia claims out of the arbitration clause borders on frivolous.

Plaintiffs also reach too far in opposing WMC's reasons why it should be allowed to invoke the arbitration provision as a non-signatory under the theories of equitable estoppel and third-party beneficiary. Plaintiffs' resort to the unclean hands doctrine here is novel at best. Plaintiffs offer no authority to ignore well-settled precedent from the Second Circuit that applies equitable estoppel to allow non-signatories like WMC to invoke an arbitration provision of a related party in a dispute in which all are intertwined. In particular, there is no extrinsic proof that WMC engaged in "unconscionable" conduct with respect to the arbitration clause it seeks to invoke. Likewise Plaintiffs' third-party beneficiary argument relies on a grossly unrealistic characterization of WMC's role vis-à-vis the CSC License Agreement.

For the reasons expounded by the Carrier Defendants, Plaintiffs' exaggerated estimates of the cost to arbitrate their individual claims are not persuasive, but in any event the Supreme Court is expected to soon clarify this point in its *Amex III* decision.

Finally, because the conspiracy claims against all Defendants are intrinsically intertwined, if the Court compels arbitration as to some of the claims but not all, the remaining claims in this Court should be stayed.

## Argument

### I.

### PLAINTIFFS SHOULD ABIDE BY THE ARBITRATION PROVISION TO WHICH THEY AGREED

WMC respectfully joins in the arguments set forth in the reply memorandum of the Carrier Defendants that the arbitration clause to which the Plaintiffs agreed in the CSC Sublicense Agreement applies to these Sherman Act claims.

### II.

### THE DOCTRINE OF UNCLEAN HANDS DOES NOT APPLY HERE, SO PLAINTIFFS ARE ESTOPPED FROM CONTESTING WMC'S INVOCATION OF THE ARBITRATION PROVISION

WMC joins the arguments of the Carrier Defendants and the CTIA that Plaintiffs' unclean hands argument is unavailing in these circumstances. Since Plaintiffs did not otherwise contest WMC's showing that equitable estoppel precludes them from opposing the application of the arbitration clause to their claims against WMC, the Court should compel arbitration on that ground.

The party asserting application of the unclean hands doctrine bears the burden of proving that "(1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result." *Cohen v. Treuhold Capital Grp., LLC (In re Cohen)*, 422 B.R. 350, 381 (E.D.N.Y. 2010) (collecting cases). The doctrine reflects that "[e]quity will not give relief where the party seeking relief has

been guilty of fraud, illegality, tortious conduct or the like." *Buchanan v. Buchanan*, 2011 Va. Cir. LEXIS 59, 13 (Va. Cir. Ct. May 4, 2011) (application of doctrine denied due to insufficient showing that husband in arrears to wife on support obligation).

Plaintiffs have cited no authority that would support the application of the unclean hands doctrine in these circumstances. First, in each of the decisions cited by Plaintiffs the inequitable conduct that was the basis for the finding of unclean hands was an uncontested fact or had already been found as a fact by the court.[1] Here, in contrast, the wrongful conduct on which Plaintiffs base their argument is very much contested; it is the very subject of this action and pending motions to dismiss. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999)("courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior.") (citing cases). Raising unclean hands in this situation begs the question whether at the end of the day Plaintiffs will be able to prove the violations that they allege. They certainly have not done so yet, so there is no basis to disqualify WMC from relying on equitable estoppel under well-settled authority.

Second, the unclean hands doctrine only applies when the conduct of the party seeking equitable relief—here the Defendants—was "'in respect of the same matter in litigation [as the conduct constituting unclean hands].'" *Cline v. Berg*, 273 Va. 142, 148 (2007) (quoting *Richards v. Musselman*, 221 Va. 181, 185 n.1 (1980)). That is not the case here, since Defendants seek to apply equitable estoppel to the enforcement of the arbitration clause while the

---

[1] *Cline v. Berg*, 273 Va. 142, 146-47 (2007) (uncontested factual finding that the plaintiff "was primarily responsible for what [wa]s an intolerable situation."); *Signature Flight Support Corp. v. Landow Aviation Ltd. P'Ship*, 698 F. Supp. 2d 602, 625 (E.D. Va. 2010) (unrebutted trial testimony); *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 505 (S.D.N.Y. 2003), *affirmed in part, vacated in part by*, 388 F.3d 39 (2d Cir. 2004) (court had made own factual findings involving the defendants' fraudulent behavior); *Cmty. Bank of Mississippi v. Stuckey*, 52 So. 3d 1179, 1183 (Miss. 2010) (finding that plaintiff had forged defendants' name on bank documents).

conduct that Plaintiffs cite as unclean hands is the creation and maintenance of the CSC system.

For the same reason, *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 362 (2d Cir. 2008), also cited by Plaintiffs, is inapposite because there the non-party seeking to invoke equitable estoppel had only developed its relationship with the party to the arbitration agreement by inducing it to breach that same contract with the plaintiff. In this case, WMC did not tortiously interfere with or otherwise take wrongful action regarding the contract between Plaintiffs and Neustar that contains the promise to arbitrate.

At the same time, *Sokol* emphasized that, as here, when the relationship between the parties to the lawsuit is such that it was predictable that the non-signatory would be involved in implementing the contract containing the arbitration clause, and "the subject matter of the dispute [is] intertwined with the contract," then the signatory should be estopped from opposing arbitration of the dispute. *Id.* at 361. Here, WMC's role in monitoring the content sent over the carrier's networks in accordance with the CSC Agreement was predictable. Plaintiffs knew that their messages would be monitored to ensure that they followed the guidelines for the content of text messages to be sent over the carriers' networks. It is this intertwinedness that compels Plaintiffs to arbitrate their claims with non-signatory WMC.

### III.

### WMC IS A THIRD-PARTY BENEFICIARY

Plaintiffs misconstrue the standard for finding that a party is a third-party beneficiary of an agreement to arbitrate. The question is not how many times the third-party is mentioned in the agreement, Pls.' Mem. 11, but rather whether the parties to the contract intended to confer a benefit on WMC "in light of all surrounding circumstances." *Bostic v. Global Strategies Grp.,*

*Inc.*, Civ. No. 96-1090-A, 1996 WL 729853, at *1 (E.D. Va. Nov. 22, 1996); WMC Def. Mem. 15. The CSC Agreement , which expressly refers to "agents/subcontractors" of CTIA, Simmons Decl. Ex. A. at § 8, and the surrounding circumstances discussed in WMC's moving memorandum, demonstrate just such an intention.

The decisions Plaintiffs cite do not help their cause because they involve quite different facts. *Environmental Staffing Acquisition Corp. v. B & R Construction Management, Inc.*, 283 Va. 787, 794 (2012), was an unusual situation in that the contract contained "an express stipulation" that identified the contract's beneficiaries. In *Copenhaver v. Rogers*, 238 Va. 361, 367 (1989), the plaintiffs "failed to allege that they were beneficiaries of the *principal contract*" because no inference could be made that the contract had been entered into in order to confer a benefit on them. *Id.* at 367 (internal quotations omitted). The court distinguished the plaintiffs' argument that they were "the intended beneficiar[ies] of an estate" versus being a third-party beneficiary to a contract. *Id*. at 368. *Bank of America v. Musselman,* 240 F. Supp. 2d 547, 557 (E.D. Va. 2003), while confirming that a party need not be named in the contract to qualify as a beneficiary, held in the context of a malpractice action that a creditor bank was not a "third-party beneficiary of an accounting services contract between an accounting firm and its client." And in *Gibson v. Medical Facilities of America, Inc.*, 80 Va. Cir. 56, 63 (2010), the court found the third-party beneficiary rule inapplicable because the claims by remaindermen of a trust were brought in tort for legal malpractice, not under the contract.

# IV.

## THE ARBITRATION CLAUSES ARE ENFORCEABLE

WMC joins in the arguments set forth in the reply memorandum of the Carrier Defendants as to why Plaintiffs TextPower and iSpeedBuy cannot avoid arbitration by contending that they need a class action to vindicate their claims.[2] In particular, WMC agrees with the suggestion that this Court await the decision of Supreme Court in *Amex III* before ruling on this argument.

# V.

## ALL PROCEEDINGS IN THIS COURT SHOULD BE STAYED IF ANY OF THE CLAIMS PROCEED TO ARBITRATION

WMC respectfully joins in the arguments of the other Defendants to the effect that if some but not all of Plaintiffs' claims are held to be arbitrable, the remaining claims should be stayed.

Plaintiffs' argument that an arbitration proceeding may not have a preclusive effect on the federal action is incorrect. Courts have long applied the doctrine of collateral estoppel to arbitrator's decisions. *See Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011) (collecting cases). *Cf. Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 223 (1985) (preclusive effect of arbitration was not before the Court).[3]

*Hard Rock Cafe International, (USA), Inc. v. Hard Rock Hotel Holdings*, LLC, 808 F. Supp. 2d 552, 564 (S.D.N.Y. 2011) (quotations omitted), is distinguishable because the

---

[2] WMC joins the other Defendants in agreeing to waive certain rights in order to lower the potential cost of arbitration. *See* Carrier Def. Reply Mem. 7-8. Specifically, WMC agrees to waive its right under the CSC Sublicense Agreement to a three-arbitrator panel, thus mooting the possibility that any Plaintiff would be subject to the higher range of arbitrator fees that Plaintiffs estimate. WMC also agrees to waive its right to have arbitrations take place in any particular geographical place so that arbitrations may be conducted near Plaintiffs' principal places of business. WMC also agrees to a pro rata split of arbitration costs here.

[3] Plaintiffs cite to *Taylor v. Sturgell*, 553 U.S. 880 (2008) in a footnote, *see* Pls.' Mem. 31 n.43; however, *Sturgell* dealt with claim preclusion broadly, not in an arbitration context.

arbitration clause contained language "evincing a clear intent that the remaining claims be resolved in federal court independent of an arbitration proceeding." Here, there is no such language. In *Stechler v. Sidley, Austin Brown & Wood, L.L.P.*, 382 F. Supp. 2d 580, 592-93 (S.D.N.Y. 2005), the court denied the stay because the claims against the various parties were not identical, there were independent claims against certain parties, and there were other cases with some of the parties and related facts active before the court. Here, Plaintiffs have asserted the same conspiracy claims against all Defendants, so any arbitrated claims would be intrinsically intertwined with those asserted against WMC.

## Conclusion

For the reasons set forth above, Defendant WMC respectfully requests the Court to enter an order (1) compelling Plaintiffs to submit all of their claims against WMC to arbitration in accordance with the terms set forth in section 19 of the CSC Agreement; and (2) staying all remaining proceedings against WMC pending the completion of the arbitration of any claims in this action, along with (3) such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       January 24, 2013

                                              KELLEY DRYE & WARREN LLP

                                              By:  /s/ Richard Donovan
                                                   Richard E. Donovan
                                                   101 Park Avenue
                                                   New York, New York
                                                   Telephone: (212) 808-7800
                                                   Facsimile: (212) 808-7897
                                                   Email: rdonovan@kelleydrye.com
                                                   *Attorneys for Defendant Wireless Media*
                                                   *Consulting, Inc. d/b/a WMC Global, sued*
                                                   *herein as WMC Global, Inc.*