USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 2 9 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
IN RE A2P SMS                    :
ANTITRUST LITIGATION             :
                                 :
_____ :
                                 :
THIS DOCUMENT RELATES TO:        :
ALL ACTIONS                      :
_____X

MASTER FILE: 12 CV 2656 (AJN)


OPINION


ALISON J. NATHAN, District Judge:

On September 16, 2013, the Court issued an order compelling arbitration of the claims

against certain Defendants in this matter and staying the remainder of this action.  (Dkt. No.

225).  In response to that order, Plaintiffs submitted a "Demand for Arbitration" to the American

Arbitration Association ("AAA") that sought a class arbitration of the parties' dispute.

(Frederick Decl. Ex. 1).  In a reversal of roles, the parties have now returned to Court and

*Defendants* request the Court's intervention to preclude Plaintiffs from pursuing class arbitration

and to require individual arbitration, whereas *Plaintiffs* urge this issue is one for the arbitrator to

decide.  The Court, however, stays its course and concludes that the issue of the availability of

class arbitration, like the underlying merits, is for the arbitrator to decide.

**I.  Background**

The allegations underlying the Plaintiffs' claims are summarized in the Court's

September 16, 2013, decision and have little bearing on matters at hand.  Of substantially greater

import is the procedural history of this case, particularly surrounding the motion to compel

arbitration.

On October 9, 2012, Defendants filed—among other things—several motions to compel

arbitration based on the governing Registration Sublicense Agreement's ("RSA") arbitration

clause.  (Dkt. Nos. 151, 153, 162-63, 171, 173).  The RSA provides, in pertinent part, that

> Any dispute, controversy or claim arising out of or relating to this Agreement or the breach, termination, non-renewal of this Agreement or any CSC, refusal to grant new CSCs, or the validity of this Agreement, shall be finally settled in accordance with the commercial arbitration rules of the American Arbitration Association (the "AAA").

RSA ¶ 19. It also provides that, "[e]xcept as precluded by the United Nations Convention on the Recognition and Enforcements of Foreign Arbitral Awards, the internal procedural and substantive laws of Virginia and the [FAA] shall govern all questions of arbitral procedure, arbitral review, scope of arbitral authority, and arbitral enforcement." RSA ¶ 19.

Two of Defendants' three Notices of Motion requested that the Court compel arbitration "on an individual basis." (Dkt. Nos. 162, 171). All three of the memoranda of law accompanying those motions also argued that class arbitration was not permitted under the circumstances, arguing that the RSA was silent as to class wide arbitration and, therefore, *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), precluded class arbitration. (Dkt. No. 153 at 16; Dkt. No. 163 at 12-13; Dkt. No. 173 at 23-24). These memoranda of law also expressly (albeit briefly) argued that whether class arbitration was available was an issue for the Court, rather than the arbitrator, to resolve.

In response, Plaintiffs challenged the arbitration agreement as a whole, contending that the Court should deny the motion to compel. In particular, Plaintiffs argued, under then-governing Second Circuit precedent, that because the costs of arbitration would preclude them from effectively vindicating their statutory rights, the arbitration clauses as a whole were unenforceable. (Dkt. No. 231 at 25-29). To make this argument, Plaintiffs cited *Stolt-Nielsen* for the proposition that "no class arbitration is available" because the applicable "arbitration clauses are silent about any class arbitration." (Dkt. No. 231 at 29 n. 42). Likewise, in support of this argument, Plaintiffs had previously represented to the Court that class arbitration was

unavailable.  (07/30/12 Tr. at 15:20-16:15 ("[B]ecause the arbitration clause doesn't have a provision in it allowing for class cases to go forward, under the *Stolt*-Nielsen case from the Supreme Court, then you can't bring a class action in arbitration, which means that if we were to have to arbitrate, they would have to be individual actions.")).  In other words, Plaintiffs sought to defeat the motions to compel arbitration by arguing, among other things, that class arbitration was unavailable under the RSA and that this was a reason to invalidate the arbitration clauses as a whole.

On June 24, 2013, the Court ordered supplemental briefing on the impact of the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), on the pending motions to compel.  Plaintiffs' supplemental brief maintained that that decision had "little effect on the pending motions," explaining that "[t]he one change in the law applicable here is Justice Scalia's limitation of the exception from arbitration for effective vindication" to situations involving high filing and administrative fees.  (Dkt. No. 205).

In granting Defendants' motion to compel arbitration and stay the litigation, the Court held that the Supreme Court's decision in *American Express* disposed of Plaintiffs' "effective vindication" argument insofar as it relied generally on the costs of individual arbitration as compared to class arbitration.  (Dkt. No. 225 at 45).  In conjunction with explaining Plaintiffs' argument, the Court stated in a footnote that

> [t]he [arbitration] clauses [in the RSA] do not specifically disallow class-wide arbitration, but the Supreme Court has held that arbitration clauses will not be read to implicitly authorize class-wide arbitration unless such a provision is explicitly contained in the agreement. *Stolt-Nielsen S.A.,* 559 U.S. at 685 ("An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate.").

(Dkt. No. 225 at 43 n.16).  As noted above, following this decision Plaintiffs submitted a request

to the arbitrator for class arbitration, leading Defendants to request this Court's intervention.

## II. Whether Plaintiffs Have Waived the Argument that the Arbitrator Should Decide the Availability of Class Arbitration

Defendants assert that Plaintiffs failed to previously argue that the arbitrator, rather than the Court, should decide whether class arbitration proceedings are available and, as a result, Plaintiffs cannot now maintain this position.[1]   (Mot. at 14; Reply at 2-4).   *See, e.g.*, *AXA Versicherung AG v. N.H. Ins. Co.*, 708 F. Supp. 2d 423, 432-38 (S.D.N.Y. 2010).   Before addressing this waiver argument, the Court must revisit its September 16, 2013, decision, particularly as to footnote 16.   In particular, the parties' briefing at this stage has drawn into sharper focus the Supreme Court's holding in *Stolt-Nielsen* and the Second Circuit's subsequent decision in *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011).   As a result, the Court has determined that two points of its September 16, 2013, decision require clarification.

First, footnote 16 overstated the breadth of *Stolt-Nielsen* in asserting that "the Supreme Court has held that arbitration clauses will not be read to implicitly authorize class-wide arbitration unless such a provision is explicitly contained in the agreement."   Specifically, in *Jock*, the Second Circuit explained that *Stolt-Nielsen* does not foreclose the possibility that parties may implicitly, rather than expressly, agree to authorize class-action arbitration.   *See* 646 F.3d at 123.   Although resolving this question was not crucial to addressing Plaintiffs' effective vindication argument—which was the context this statement was made in—the present motions have alerted the Court to the overstatement and it is incumbent upon the Court to clarify it.

Second, although the Defendants moved to compel individual arbitration, rather than class arbitration, the Court failed to address Defendants' argument that the availability of class proceedings is a gateway issue for the Court to resolve, rather than an arbitrator.   Although

---

[1] Indeed, Defendants suggest that Plaintiffs impliedly conceded that the Court can decide this threshold question by arguing to the Court that class proceedings were, in fact, unavailable.

footnote 16 could arguably be read as implicitly resolving this issue in Defendants' favor, that footnote was intended to provide context for the basis of Plaintiffs' "effective vindication" argument.  Particularly given that the Supreme Court's decision in *Amex* meant that the Court did not need to resolve whether class arbitration was available to dispose of Plaintiffs' effective vindication argument, the Court did not intend this single sentence to dispose of the complicated issue discussed below.  Rather, the Court inadvertently overlooked the aspect of Defendants' motion requesting the particularized relief now at issue.  As a result, the Court does not agree that it may resolve the present dispute simply by "enforcing" its previous order.

The question remains whether Plaintiffs waived their argument that the arbitrator should decide the availability of class arbitration.  The Court finds that they have not.  As Plaintiffs note, in light of the strong federal policy favoring arbitration, waivers of arbitration are not lightly inferred and doubts concerning waiver are resolved in favor of arbitration.  *PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 107 (2d Cir. 1997).  Although waiver may be found where a party has engaged in protracted litigation that prejudices the opposing party, none of the factors that typically counsels in favor of waiver is sufficient to find waiver here.  *See id.* (noting that courts consider such factors as "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice").  Here, the proceedings up to this point have been relatively limited and have, in fact, focused on the appropriateness of referring the matter to arbitration.  *Cf. AXA Versicherung AG*, 708 F. Supp. 2d at 434-35, 437-38 (party seeking arbitration of an issue raised the issue for the first time after the close of discovery in summary judgment motions and motions in limine, leading to substantial expense, which conduct "evince[d] its intention to keep its potential rights to arbitration in its back pocket").  In addition,

Defendants have not pointed to any substantial prejudice that they have suffered.  Finally, while a non-trivial amount of time has elapsed since the commencement of this litigation, based on the procedural history of this case, it would not be appropriate to attribute most of this delay to Plaintiffs' conduct.  In addition, determining whether the Court or an arbitrator should resolve the availability of class arbitration proceedings is a question of law, which also counsels against finding waiver under these particular circumstances.  *See, e.g.*, *McGarr v. City of Peekskill*, No. 07-cv-9488, 2013 U.S. Dist. LEXIS 141064, at *36 (S.D.N.Y. Sept. 27, 2013) ("[C]ourts generally do not deem an argument to be waived where [it] presents a question of law and there is no need for additional fact-finding." (quotation marks omitted)).

Moreover, Plaintiffs' failure to argue that the availability of class arbitration proceedings was for the arbitrator rather than the Court must be understood in the context in which it was made.  Specifically, under the Second Circuit precedent governing at the time, Plaintiffs were arguing against the availability of arbitration *at all* based on the view that the unavailability of class arbitration would render the arbitration clause of the RSA unenforceable as a whole.  (*See, e.g.*, Dkt. No. 231 at 25-29).  It would have been inconsistent for Plaintiffs to argue against referring the matter as a whole to an arbitrator while simultaneously arguing that the predicate for their position—the unavailability of class arbitration—was a matter that must be decided by an arbitrator.  *See Reed v. Fla. Metro. Univ.*, 681 F.3d 630, 634 (5th Cir. 2012) ("Indeed, as Reed sought to avoid arbitration altogether and to proceed as a class action, we cannot conclude that he intended to submit the class arbitration issue to the district court.") *abrogated in part on other grounds Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013).  Furthermore, in light of the Supreme Court's opinion in *American Express Co.*, 133 S. Ct. 2304, the legal landscape shifted during the course of this proceeding and the Court was not called upon to resolve this

question in order to dispose of Plaintiffs' effective vindication argument. (*See* Dkt. No. 225 at 45).

### III. The Gateway Question

Having concluded that Plaintiffs have not waived their argument that the arbitrator should decide whether class arbitration procedures are available, the Court turns to the substance of this argument and Defendants' opposition thereto. The background principles regarding whether an issue is to be resolved by the Court or by an arbitrator were summarized in *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002). There, the Supreme Court explained the distinction between "questions of arbitrability," which are presumptively for resolution by the Court unless the parties "clearly and unmistakably provide otherwise," versus "other kinds of general circumstances where parties would likely expect that an arbitrator would decide the gateway question." *Id.* at 83-84 (quotation marks omitted). Questions of arbitrability arise in the

> narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 84. "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide" as does "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* On the other hand, questions that are presumptively for the arbitrator include "'procedural' questions that grow out of the dispute and bear on its final disposition," as well as issues of waiver, delay, or a like defense to arbitrability. *Id.*

As a result, a determination that the Court, rather than an arbitrator, is to decide whether class arbitration is available requires the Court to make two determinations. First, the Court

must assess whether this is a question of arbitrability that is presumptively for Court resolution. Second, if the Court determines that this is a question of arbitrability, the Court must find that the RSA does not "clearly and unmistakably" assign this question to the arbitrator.

## A. Supreme Court Precedent

Although the Supreme Court has yet to definitively answer the question of whether the availability of class arbitration procedures is presumptively a question for the Court or the arbitrator, a series of cases guide the Court's inquiry.

The Supreme Court focused on the question at hand in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003). In a fractured decision, a four-Justice plurality explained that determining whether class arbitration was allowed by an agreement that was "silent" with respect to the availability of such procedures was for the arbitrator to resolve, rather than the Court. *See id.* at 452-53 The plurality decision reasoned that this issue was not a question of arbitrability because "[i]t concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties," but was, instead, an issue "concern[ing] contract interpretation and arbitration procedures." *Id.* Specifically, "the question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*. Rather, the relevant question here is what *kind of arbitration proceeding* the parties agreed to." *Id.* at 452. Given the contract's "sweeping language concerning the scope of the questions committed to arbitration— namely "*all* disputes, claims or controversies" arising from or relating to the contract or the relationships resulting from the contract—the plurality viewed the availability of classwide arbitration as a question for the arbitrator. *Id.* at 453.

Next, in *Stolt-Nielsen* the Supreme Court addressed an arbitral decision which had held that class arbitration was available under an arbitration agreement that the parties had stipulated

8

was "silent" on the availability of such procedures—*i.e.*, the parties "agreed . . . that they had not reached any agreement on the issue of class arbitration." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 673 (2010). In particular, because the parties stipulated that they had not come to an agreement on the availability of class arbitration, "the arbitrators' proper task was to identify the rule of law that governs in that situation" by looking to the FAA or the bodies of law that the parties contended were governing. *Id.* Applying even the deferential standard applicable to review of such decisions, the Supreme Court held that the arbitration panel exceeded its powers by imposing its own policy choice on the issue of the availability of class arbitration. *Id.* at 676-77.

In the course of analyzing the arbitration panel's decision, *Stolt-Nielsen* discussed the plurality decision in *Bazzle*. After recounting the background to that case, *Stolt-Nielsen* emphasized that "only the plurality" decided that "an arbitrator, not a court, [must] decide whether a contract permits class arbitration." *Id.* at 680. The Supreme Court expressly declined to revisit that question in *Stolt-Nielsen* "because the parties' supplemental agreement expressly assigned this issue to the arbitration panel, and no party argue[d] that this assignment was impermissible." *Id.*

After discussing *Bazzle*, the Supreme Court in *Stolt-Nielsen* reiterated certain of the Federal Arbitration Act's "rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." *Id.* at 681; *see also id.* at 682-83 (noting also that the parties are generally free to structure their agreements as they see fit, and that courts and arbitrators are to give effect to their contractual rights and expectations). Moreover, "it is also clear . . . that parties may specify *with whom* they choose to arbitrate their disputes." *Id.* at 683.

Applying these principles, the Supreme Court held that "[a]n implicit agreement to

authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Id.* at 685. "This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id.* (noting that among the benefits of bilateral arbitration that prompt parties to forego the safeguards of litigation in court are "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"). Among the "fundamental changes" identified by the Supreme Court in this context were (1) the arbitrator resolves many disputes between very large numbers of parties; (2) the changes in rules as to privacy and confidentiality under class arbitration rules; (3) that the arbitration binds absent parties; and (4) that the commercial stakes resemble those in class-action litigation. *See id.* at 686. As a result, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.*[2]

The Supreme Court reiterated these views in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011), in the course of invalidating as preempted by the FAA a California Supreme Court ruling that "classif[ied] most collective-action waivers in consumer contracts as unconscionable." For example, the Supreme Court noted that the FAA was intended to promote arbitration and that the point of allowing the parties to pursue such alternative dispute resolution procedures is "to allow for efficient, streamlined procedures tailored to the type of dispute." *Id.* at 1749. Class arbitration, compared to bilateral arbitration, "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to

---

[2] Due to the parties' stipulation that the arbitration agreement was silent as to class procedures, the Supreme Court had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." *Stolt-Nielsen*, 559 U.S. 662, 687 n.1.

generate procedural morass than final judgment." *Id.* at 1751 (noting also that "class arbitration *requires* procedural formality" and finding it unlikely that Congress intended "to leave the disposition of these procedural requirements to an arbitrator"). Moreover, "class arbitration greatly increases risks to defendants" due to arbitration's lack of multilayered review and the high stakes involved when an entire class's claims are aggregated into one action. *Id.* at 1752.

In short, the Supreme Court has not issued binding precedent addressing the issue before the Court, but has provided guideposts for the Court's consideration. In particular *Bazzle*, although non-binding, suggests that the arbitrator should decide the availability of class arbitration, whereas *Stolt-Nielsen* and *Concepcion* caution that classwide arbitration and individual arbitrations are very different procedures.

### B. Lower Court Decisions

Having reviewed the Supreme Court precedent and finding that it does not definitively resolve the issue, the Court next looks to Second Circuit case law and then to the decisions of other courts as persuasive authority.

Defendants' for their part, contend that the Second Circuit's decisions in the *Amex* line of cases control, requiring the Court to decide the availability of classwide arbitration. Defendants claim that these cases hold that "[w]hether class proceedings are available in arbitration is a 'gateway dispute' that 'raises a question of arbitrability for a court to decide.'" (Mot. at 8-9 (quoting *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300, 311 (2d Cir. 2009) (*Amex I*) (internal quotation marks omitted) *vacated on other grounds Am. Express Co. v. Italian Colors Rest.*, 559 U.S. 1103 (2010)); *see also Emilio v. Sprint Spectrum L.P.*, 508 Fed. Appx. 3, 4-5 (2d Cir. 2013). In *Amex I*, the Second Circuit held that courts, rather than arbitrators, are to address whether class action waivers

11

contained in arbitration agreements are enforceable. 554 F.3d at 311. Specifically, *Amex I* explained that because the plaintiffs in that case were disputing the enforceability of the class action waiver and, "by extension, the validity of the parties' agreement to arbitrate," the plaintiffs had raised a question of arbitrability about whether the parties are bound by the arbitration clause. *Id.* at 311.

The present case does not involve a challenge to the enforceability of an express class action waiver or, at this stage, any enforceability challenge at all. Rather, the issue is one of contract interpretation as to the form of the arbitration proceeding, occurring after the Court already resolved the parties' arguments as to the enforceability of the arbitration clauses. Although there are parallels between the two issues in terms of their practical effect—both may be dispositive as to the availability of class arbitration and whether an agreement provides for the availability of class arbitration might raise issues pertaining to the enforceability of that agreement—the former relates to whether the parties are bound by the plain terms of their arbitration agreement whereas the latter relates to determining the parties' intent as to a binding agreement to arbitrate.

*Amex I* itself noted this distinction, explaining that *Bazzle* did not require that the arbitrator resolve the enforceability of a class action waiver because, unlike *Bazzle*, the Second Circuit "d[id] not face an issue of contract interpretation; the Card Acceptance Agreement is unambiguous in forbidding arbitration to proceed on a class basis." *Id.* at 311 n.10; *see also Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 617 n.4 (E.D.N.Y. 2011) (noting this distinction). Other courts have similarly distinguished cases involving the enforceability of class action waivers from those merely involving contract interpretation. *See Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) ("Here, the arbitration agreement

12

does not contain an express class action waiver. . . . [T]he actual determination as to whether

class action is prohibited is a question of interpretation and procedure for the arbitrator.");

*Vilches v. Travelers Cos.*, 413 Fed. Appx. 487, 491-92 (3d Cir. 2011); *Puleo v. Chase Bank USA,*

*N.A.*, 605 F.3d 172, 178-80 (3d Cir. 2010) (rejecting the argument that an arbitrator could decide

the enforceability of a class action waiver); *Kristian v. Comcast Corp.*, 446 F.3d 25, 53-54 (1st

Cir. 2006). And the Supreme Court has held that courts "should not, on the basis of 'mere

speculation' that an arbitrator might interpret . . . ambiguous agreements in a manner that casts

their enforceability into doubt, take upon . . . the authority to decide the antecedent question of

how the ambiguity is to be resolved." *PacifiCare Health Sys. v. Book*, 538 U.S. 401, 406-07

(2003). The Court concludes that the *Amex* line of cases do not control this inquiry.

     For their part, Plaintiffs contend that "Second Circuit case law compels the result that the

question for whether a class arbitration may be conducted here is for the arbitrators and not this

Court," citing *Jock*, 646 F.3d 113, and *Vaughn v. Leeds, Morelli & Brown, P.C.*, 315 Fed. Appx.

327 (2d Cir. 2009). (Opp. at 8-9). Likewise, Plaintiffs rely on a slew of cases from the First,

Third, Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits that they contend "all held, at least

implicitly, that determination of whether an arbitration clause permits class proceedings is a

matter for arbitrators." (Opp. at 11). However, review of many of these cases shows that—at

least as to the present issue—they add little to the Supreme Court decisions summarized above.

     For example, in *Jock*, after the district court compelled arbitration, "[t]he parties

submitted to the arbitrator the question whether [the arbitration] agreement permitted or

prohibited class arbitration." *Jock*, 646 F.3d at 116. As a result, the issue before the Second

Circuit was the substantive review, under the deferential standard of the FAA, of the arbitrator's

ruling the class arbitration was available—not, as Plaintiffs would have it, whether this question

was for the Court rather than the arbitrator to resolve in the first instance, a question that it does not appear was raised on appeal. *See id.* at 121-25.

Nor does the Court read into *Jock* an "implicit" holding that the determination of the availability of class arbitration is an issue for the arbitrator based on the Court of Appeals' failure to address this issue, as it is plain that the Second Circuit was not compelled to raise this issue *sua sponte*. *Stolt-Nielsen* arose on a materially identical procedural posture—review of an arbitral decision where the parties committed this question to the arbitrator—and the Supreme Court explained that, in light of the parties' commitment of the question to the arbitrator and the failure to object, they would not revisit *Bazzle* and would leave the matter an open question. *Stolt-Nielsen S. A.*, 559 U.S. at 680; *see also Oxford Health Plans LLC*, 133 S. Ct. at 2068 n.2 (arising on a similar posture and noting that "this case gives us no opportunity to [resolve whether the availability of class arbitration is a question of arbitrability] because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures"); *Guida*, 793 F. Supp. 2d at 619 n.7 (noting that *"Jock* does not address the threshold question of who should decide whether the parties agreed to class arbitration.").[3]

Certain of the out-of-circuit cases on which Plaintiffs rely arise in a similar posture and are, therefore, inapt. *See, e.g., Southern Communs. Servs. v. Thomas*, 720 F.3d 1352, 1356-57 (11th Cir. 2013); *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 348 (4th Cir. 2008). And even if these cases could be construed as implicitly endorsing Plaintiffs' position, they contain no reasoning on this point and are thus lacking in persuasive force. Moreover, to the extent that Plaintiffs rely on cases suggesting that the arbitrator had authority to address the availability of

---

[3] The other Second Circuit case on which Plaintiffs rely, the unpublished decision in *Vaughn*, 315 Fed. Appx. at 329, was decided before *Stolt-Nielsen* and, without analysis, simply treated the *Bazzle* plurality holding as controlling. The same also appears true for *Veliz v. Cintas Corp.*, 273 Fed. Appx. 608, 609 (9th Cir. 2008). *See also JSC Surgutneftegaz v. President & Fellows of Harvard College*, No. 04-cv-60692007 U.S. Dist. LEXIS 79161, at *5-6 (S.D.N.Y. Oct. 11, 2007) (relying on *Bazzle* and the AAA Supplementary Rules to confirm an arbitral award).

class arbitration because the arbitration agreement incorporated the rules of the arbitration forum that provided for such authority, *see, e.g.*, *Reed*, 681 F.3d at 635 *abrogated in part on other grounds Oxford Health Plans LLC*, 133 S. Ct. at 2068; *Long John Silver's Rests.*, 514 F.3d at 347; *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005), this principally relates to whether the parties "clearly and unmistakably" committed the question to the arbitrator, not whether it is a "question of arbitrability" in the first instance.

Other cases that Plaintiff cites, although speaking to similar disputes as to what constitutes a question of arbitrability, do not address class arbitration. For example, *Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 683 F.3d 18, 23-26 (1st Cir. 2012), did not raise the question of the availability of class arbitration but rather involved "associational" arbitration— *i.e.*, whether an association could represent its members in an arbitration proceeding. Likewise, *Blue Cross Blue Shield of Mass. v. BCS Ins. Co.*, 671 F.3d 635, 638-40 (7th Cir. 2011), addressed whether the decision to allow consolidated arbitration proceedings is for the court or the arbitrator. Both cases distinguished class arbitration as raising different concerns. *See Fantastic Sams Franchise Corp.*, 683 F.3d at 23-24; *Blue Cross Blue Shield of Mass.*, 671 F.3d at 640 ("Class actions always have been treated as special."); *see also Safra Nat'l Bank v. Penfold Inv. Trading, Ltd.*, No. 10-cv-8255, 2011 U.S. Dist. LEXIS 51687, at \*8-9 (S.D.N.Y. Apr. 20, 2011) (explaining that "*Stolt-Nielsen* held that, absent an agreement to arbitrate on a class basis, the availability of class arbitration is a gateway issue to be decided by the courts" but that this holding did not apply because the issues raised were joinder and consolidation).

Viewed in this light, it is apparent that the appellate courts addressing this issue after *Stolt-Nielsen* have arrived at divergent results.[4] *Compare Quilloin*, 673 F.3d at 232 (holding,

---

[4] Indeed, several of the district court cases on which Plaintiffs rely state that the issue is an open question in their circuits. *Lee v. JPMorgan Chase & Co.*, No. SACV 13-511, 2013 U.S. Dist. LEXIS 165959, at \*9-13 & n.3 (C.D.

without analysis, that "the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator" and citing *Stolt-Nielsen* for this proposition); *Vilches*, 413 Fed. Appx. at 491-92 *with Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597-99 (6th Cir. 2013).  Although when one considers the analysis of district court cases on the issue, the weight of authority likely favors Plaintiffs' position, the decisions of these courts are merely persuasive authority. *Compare, e.g., Lee v. JPMorgan Chase & Co.*, No. SACV 13-511, 2013 U.S. Dist. LEXIS 165959, at *9-13 (C.D. Cal. Nov. 14, 2013); *Cramer v. Bank of America, N.A.*, No. 12 C 8681, 2013 WL 2384313, at *3-4 (N.D. Ill. May 30, 2013); *Hesse v. Sprint Spectrum L.P.*, No. C06-0592, 2012 U.S. Dist. LEXIS 20389, at *9-14 (W.D. Wash. Feb. 17, 2012); *Price*, 908 F. Supp. 2d at 944-45; *Okechukwu v. DEM Enterprises, Inc.*, No. C 12-03654, 2012 WL 4470537, at *2-3 (N.D.Cal. Sept. 27, 2012); *Guida*, 793 F. Supp. 2d at 617-18 (collecting cases); *Fisher v. General Steel Domestic Sales*, LLC, No. 10-cv-01509, 2010 WL 3791181, at *2-3 (D.Colo. Sept. 22, 2010) *with Safra Nat'l Bank*, 2011 U.S. Dist. LEXIS 51687, at *8-9.  Given the absence of binding precedent the Court turns to the merits of the various arguments relating to whether the question of the availability of class arbitration ought to be decided by the Court.

## C. Analysis

For the reasons explained below, the Court is persuaded by the Supreme Court's decision in *Bazzle* that the arbitrator, rather than the Court, should decide whether class arbitration is available.  In particular, the availability of class arbitration does not concern determining either the general enforceability of an arbitration agreement or determining which substantive claims

---

Cal. Nov. 14, 2013); *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 941 (N.D. Ill. 2012); *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011); *cf. Planet Beach Franchising Corp. v. Zaroff*, 2013 U.S. Dist. LEXIS 121908, at *26-27 (E.D. La. Aug. 27, 2013).

may be subject to an arbitration clause. *See Bazzle*, 539 U.S. at 452-53; *see also Howsam*, 537 U.S. at 84 (identifying disputes about whether the parties are bound by an arbitration clause or whether an arbitration clause covers a particular controversy as questions of arbitrability); *Vilches*, 413 Fed. Appx. at 491-92. Put succinctly, the question of the availability of class arbitration does not go to the power of the arbitrators to hear the dispute, but rather to an issue that simply pertains to the conduct of proceedings that are properly before the arbitrator.

For example, in the circumstances at hand, the Court has already ruled that the parties' agreement to arbitrate is clear, that this agreement is enforceable, and that the arbitration clauses cover the parties' substantive claims. *See Bazzle*, 539 U.S. at 452-53 (distinguishing questions pertaining to whether a party agreed to arbitrate a matter from the "kind of proceeding" they may have agreed to). The Court having already made these initial determinations, interpreting the provisions of the RSA to determine whether they allow for class arbitration is a matter within the arbitrator's competence. *See Howsam*, 537 U.S. at 84 (noting that "procedural" questions are presumptively for the arbitrator to resolve); *Vilches*, 413 Fed. Appx. at 491-92 (viewing the availability of class arbitrability as a procedural question for the arbitrator to resolve).

This view is also wholly consistent with Supreme Court precedent explaining that, in the face of a valid agreement to arbitrate, it will be the rare question that must be decided by the Court. For example, the Supreme Court has characterized questions of arbitrability as a "narrow" and "limited" exception to the general policy in favor of arbitration of disputes. *Bazzle*, 539 U.S. at 452; *see also Howsam*, 537 U.S. at 83-84 (explaining that "questions of arbitrability" should not be read so broadly as to include "any potentially dispositive gateway question" merely because "its answer will determine whether the underlying controversy will proceed to arbitration on the merits"). Such statements demonstrate that courts should be

reluctant to expand the categories of "questions of arbitrability" beyond the limits identified by the Supreme Court.  Moreover, further counseling against such an expansion is the FAA's policy in favor of arbitration, a policy which is "beyond dispute" according to the Supreme Court, and the objective of arbitration in achieving streamlined proceedings and expeditious results. *Concepcion*, 131 S. Ct. at 1749; *see also Howsam*, 537 U.S. at 83; *Planet Beach Franchising Corp.*, 2013 U.S. Dist. LEXIS 121908, at *29-30.  Removing an issue from consideration by the arbitrator and assigning it the courts to address through relatively formal procedures and multi-layered review tends to run counter to this policy.  *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

   *Bazzle* remains the most pertinent authority and, in the absence of other Supreme Court or Second Circuit precedent or a clear trend to the contrary among lower courts, the Court assigns its analysis substantial weight.  *See, e.g., Lee*, 2013 U.S. Dist. LEXIS 165959, at *9-13; *Guida*, 793 F. Supp. 2d at 615.  Although, as the Court will explain, two concerns arising from *Stolt-Nielsen* counsel against blindly accepting the approach in *Bazzle* without further consideration, upon reflection these concerns are not sufficient to outweigh the persuasive analysis set forth by *Bazzle*'s plurality.

   The first concern arising from *Stolt-Nielsen* is that the Court noted in dicta that *Bazzle* does not constitute binding precedent and that the issue presently before the Court is an open question.  *Stolt-Nielsen S. A.*, 559 U.S. at 680.  This, however, is far cry from a holding—or even a suggestion—that *Bazzle* reached the wrong result.  Indeed, as dicta goes, the Court's comment

18

in *Stolt-Nielsen* was particularly unrevealing, as the Court refrained from commenting on the reasoning of *Bazzle* and set forth no explicit reasoning favoring Defendants' position.

The second potential concern raised by *Stolt-Nielsen*—and again in *Concepcion*—is that the Court identified several "fundamental" differences between bilateral and class arbitration, including the high stakes of class arbitration; the relative formality, cost, and slow pace of class arbitration; and the difficulties surrounding binding absent parties to the decision. *See Concepcion*, 131 S. Ct. at 1750-51; *Stolt-Nielsen S. A.*, 559 U.S. at 686. However, under *Stolt-Nielsen* these differences are primarily relevant to deciding the availability of such class arbitration, not the antecedent question of whether that decision is assigned to the Court or the arbitrator. Indeed, some courts have dismissed these differences on that basis. *See, e.g., Lee*, 2013 U.S. Dist. LEXIS 165959, at *12 ("However, this Court concludes, as did the Third Circuit, that the Supreme Court identified these features only to explain why the standard for determining when parties have consented to class arbitration is stringent."); *Guida*, 793 F. Supp. 2d at 616 & n.3, 618-19.

The Court does not go so far as to entirely discount these concerns. There are reasons to view the "fundamental" differences between class arbitration and bilateral arbitration as relevant to whether the availability of such class arbitration is a "question of arbitrability." Specifically, the Supreme Court has described questions of arbitrability as arising in the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter," rather than the arbitrator, "and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam*, 537 U.S. at 83-84. Viewed in this context, the availability of class arbitration is plausibly an issue that contracting parties might expect a court to resolve,

19

subject to standard appellate review, rather than risk undergoing the entirety of a high-stakes, high-cost arbitration that may differ from the proceeding contemplated by the parties. *See Reed Elsevier, Inc.*, 734 F.3d at 598. ("Gateway questions are fundamental to the manner in which the parties will resolve their dispute—whereas subsidiary questions, by comparison, concern details. And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail.").

However, none of these differences rebut the core point in *Bazzle* that the class of questions of arbitrability is a limited one, and that the availability of class arbitration pertains to the procedures to be employed at an arbitration, not whether an arbitration is permissible in the first instance. As the Seventh Circuit pointed out, "the Court in *Stolt-Nielsen* did not deny that class-wide arbitration is still 'arbitration'; it just held that certifying a class exceeds an arbitrator's powers unless the parties have consented to class procedures." *Blue Cross Blue Shield of Mass.*, 671 F.3d at 639.

Although the issue is a close one, I am persuaded by the reasoning in *Bazzle* and hold that the availability of class arbitration is an issue to be resolved by the arbitrators in the first instance. In the end, the issue raised is not one of enforcement of an arbitration agreement or the power of the arbitrator to hear a dispute, but rather the form of the proceedings as to a dispute that is, as this Court previously determined, subject to the arbitrator's authority. Although the differences articulated in *Stolt-Nielsen* and *Concepcion* between class arbitration and bilateral arbitration are a relevant consideration that gives the Court some pause, these differences speak more to the default rule regarding the availability of class arbitration than the default rule of which forum should decide that issue.

## IV. Conclusion

Defendants' request that the Court order individual arbitration in this matter is denied, as

20

the matter is for the arbitrator to resolve.  Plaintiffs' cross-motion is granted to the extent that the

Court finds that the availability of class arbitration proceedings is an issue to be resolved by the

arbitrator.  The Court does not reach the parties' other arguments as to whether class arbitration

is available or whether Plaintiffs' have waived or conceded the merits of this issue.  These are

matters for the arbitrator to decide.  This resolves docket numbers 236 and 243.

       SO ORDERED.


Dated: May _____, 2014
      New York, New York

                                   ALISON J. NATHAN
                                   United States District Judge

21