USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 27 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
IN RE A2P SMS                           :   MASTER FILE 12-CV-2656
ANTITRUST LITIGATION                    :
                                        :
_____  :   MEMORANDUM AND ORDER
                                        :
THIS DOCUMENT RELATES TO:               :
ALL ACTIONS                             :
------------------------------------------------------X

ALISON J. NATHAN, District Judge:

On May 29, 2014, this Court issued an order holding that whether the parties' agreement required class or individual arbitration was a decision for the arbitrator to decide ("May 29 Order"). Dkt. No. 251. Now before the Court is the Carrier Defendants[1] and CTIA-The Wireless Association's (collectively, "Defendants") motion to stay that Order pending Defendants' appeal. Dkt. No. 270. For the reasons stated herein, the motion is DENIED.

I.   BACKGROUND

The factual background and procedural history of this case are discussed in detail in the Court's Opinions and Orders dated September 16, 2013, Dkt. No. 225, and May 29, 2014, Dkt. No. 251. The Court assumes familiarity with this material and only discusses briefly the procedural history that is relevant to this motion.

On April 5, 2012, Plaintiffs commenced a putative class action against the Defendants, Dkt. No. 1, and on September 17, 2012, Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC"), Dkt. No. 138. On October 9, 2012, the Defendants filed a motion to stay the proceedings and compel arbitration based on the parties' Registration Sublicense Agreement. *See* Dkt. Nos. 162-164, 171-173. Specifically, Defendants moved to "compel Plaintiffs to arbitrate all claims set forth in the [SCAC] on an individual basis." *See* Dkt. Nos. 162 and 171. In an Opinion and Order dated September 16, 2013, the Court granted the Defendants' motions

---

[1] The Carrier Defendants are AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Sprint Nextel Corporation, T-Mobile USA, Inc., and U.S. Cellular Corporation.

1

to stay the proceedings and to compel arbitration, but the Court did not specify whether the motion compelled arbitration on an individual or class basis. Dkt. No. 225.

On January 28, 2014, Plaintiffs filed a demand for class arbitration with the American Arbitration Association ("AAA"). Dkt. No. 237 Ex. 1.C. On February 11, 2014, Defendants returned to this Court seeking an order "compelling individual arbitration of Plaintiffs' claims" pursuant to both Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. Dkt. No. 236. The parties stipulated that the arbitration would be stayed pending this Court's resolution of Defendants' motion. Dkt. No. 241. On May 29, 2014, this Court declined to issue an order denying or compelling class arbitration of Plaintiffs' claims; instead, the Court held that whether the claims could be brought as a class or must be brought on an individual basis is a matter for the arbitrator, not the Court, to resolve. Dkt. No. 251 at 20-21. Defendants then filed a notice of appeal to the Second Circuit in late June 2014. Dkt. Nos. 260, 267.

On July 2, 2014, the Defendants filed the present motion to stay this Court's May 29 Order, Dkt. No. 270, and the motion was fully briefed on August 1, 2014.

## II. DISCUSSION

A district court possesses the power to stay its own order during the pendency of an appeal of that order. *See, e.g., Nw. Nat'l Ins. Co. v. Insco, Ltd.*, 866 F. Supp. 2d 214, 217 (S.D.N.Y. 2011); *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010); *Ivor B. Clark Co. v. Hogan*, 296 F. Supp. 407, 409 (S.D.N.Y. 1969); *see also Nken v. Holder*, 556 U.S. 418, 421 (2009) ("[I]t 'has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.'" (citing *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)).

Application of this power to stay an order is guided by a well-established four-factor test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434. Likelihood of success and irreparable injury are

2

the most "critical" factors in this analysis, *id.*, and a stronger showing on one of these two factors can offset a weaker showing on the other. *See, e.g., Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay.")); *Nw. Nat'l Ins. Co.*, 866 F. Supp. 2d at 218 ("'[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other.'" (quoting *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)).

The Second Circuit has long recognized that the "likelihood of success on the merits" that is required for both a preliminary injunction and a stay can be satisfied if there are "serious questions" going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips *decidedly* in its favor. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "The 'serious questions' standard permits a district court to grant a preliminary injunction [or stay][2] in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction [or stay]." *Id.* (citing *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 814, 815-19 (2d Cir. 1979)). A "serious questions" standard is particularly appropriate when a district court is asked to stay its own order; under such circumstances, the court has already determined that the applicant failed to succeed on the merits. Asking the district court to then find that the movant is likely to succeed on the merits on appeal would require the district court to find that its own order is likely to be reversed—a standard that for practical purposes is rarely going to be satisfied. With these principles in mind, the Court addresses each factor in turn.

---

[2] *Citigroup Global Markets* concerned a motion for a preliminary injunction, but the Second Circuit recognized—as did the Supreme Court in *Nken*—that the "four factor standard for granting a stay pending appeal . . . overlap[s] substantially with the preliminary injunction standard." 598 F.3d at 37 (citing *Nken*, 129 S. Ct. at 1761).

3

### A. Serious Questions Going to the Merits

The Court recognizes, as it did in its earlier decision, that there are serious questions going to the merits of Defendants' appeal. The Court's May 29 Order held that "the availability of class arbitration is an issue to be resolved by the arbitrators in the first instance." Dkt. No. 251 at 20. But in so holding, the Court noted that the "issue is a close one," because there is no controlling Supreme Court or Second Circuit precedent on point and the only available guiding precedent does not cut decisively in either direction. The Court will not re-visit the extended analysis of its earlier decision, but does note that since the Order was handed down, the Third Circuit joined the Sixth Circuit in reaching a conclusion contrary to this Court's by holding that "whether an agreement provides for classwide arbitration is a 'question of arbitrability' to be decided by the District Court." *Opalinski v. Robert Half Int'l, Inc.*, No. 12-4444, 2014 U.S. App. LEXIS 14538, at *11 (3d Cir. July 30, 2014); *see also Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). Given this lack of clear precedent and the divided views of several courts, Defendants' appeal certainly raises serious questions going to the merits of the present dispute.

That said, Plaintiffs contend that Defendants are unlikely to succeed on the merits of their appeal for the separate reason that the appeal is procedurally improper. While the Second Circuit will ultimately decide if it has jurisdiction to hear the appeal, the Court agrees that there are questions regarding the appealability of this Court's May 29 Order that weigh against a stay. "As an initial matter, the Supreme Court has 'emphasized that statutes authorizing appeals are to be strictly construed.'" *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 138-39 (2d Cir. 2008) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 43 (1983)). Moreover, "[j]urisdiction over the appeal . . . 'must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 (2009) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)).

First, the Court's May 29 Order may not be a "final" decision that is appealable under Section 16(a)(3) of the FAA, 9 U.S.C. § 16(a)(3). For example, in *Opalinski*, the Third Circuit noted that an order compelling arbitration but holding that determination of class arbitration is a question for the arbitrator "was not a final decision because it effected only a non-final, administrative closure, and explicitly acknowledged the potential need for further litigation before the District Court." 2014 U.S. App. LEXIS 14538, at *4-5 (citing *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 247 (3d Cir. 2013)). Second, the Court's May 29 Order was not a "refus[al of] a stay of any action under Section 3" of the FAA that would be appealable under Section 16(a)(1)(A), because the Court in fact granted Defendants' motion for a stay of the federal court proceedings in order to compel arbitration. Third, the Court's Order was not a "den[ial of] a petition under Section 4 of [the FAA] to order arbitration to proceed" that would be appealable under Section 16(a)(1)(B), because although the Court denied Defendants' request to order individual arbitration, the Court held that the availability of class arbitration should be determined in the pending arbitration that should proceed apace. Thus, the Court's May 29 Order declined to decide whether class arbitration is available under the parties' agreement but nonetheless favored arbitration over litigation. Construing the FAA narrowly, this Order may not be appealable at this point in the proceedings. *Cf. Wabtec Corp.*, 525 F.3d at 138-39 ("The FAA expressly provides for the immediate appeal of certain interlocutory orders that are *hostile* to arbitration." (emphasis added)); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007) ("Section 16 'makes clear that any order favoring litigation over arbitration is immediately appealable and any order favoring arbitration over litigation is not.'" (quoting *Ballay v. Legg Mason Wood Walker, Inc.*, 878 F.2d 729, 732 (3d Cir. 1989)).

Because there are serious questions going to the merits of Defendants' appeal, but also serious doubts as to whether such an appeal is jurisdictionally proper at this stage, this factor is neutral.

B.   **Balance of Hardships**

The Court also concludes that the balance of hardships does not tip decidedly in Defendants' favor. Beginning with the harm to Plaintiffs, their primary contention on this point is that they are "three small firms" whose principals "do not have the financial wherewithal on their own to pursue individual arbitrations" and any "further delay in a determination of whether they may pursue a class action may be the death knell of their attempt to redress the [Defendants'] anti-competitive system." Opp. at 5. But if Plaintiffs are in fact facing resource constraints, a stay will focus their law firms on one litigation battle at a time and reduce wasted resources on possibly superfluous proceedings. Moreover, whether Plaintiffs have the financial wherewithal to pursue *individual* arbitrations has no bearing on the effect of a stay of this Court's Order holding that the arbitrator decides whether class-wide relief is available. Thus, there is no harm to the Plaintiffs in staying this Court's Order pending the Second Circuit's resolution of Defendants' appeal.

Nevertheless, the Court also sees little harm to the Defendants. They analogize to case law holding that "'the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so to submit to an arbitrator's own determination of his authority.'" *Dain Bosworth, Inc. v. Fedora*, No. 92 Civ. 7813 (JSM), 1993 U.S. Dist. LEXIS 1139, at *5 (S.D.N.Y. Feb. 3, 1993) (quoting *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002)). While the Court recognizes the analogy to an arbitrator's jurisdiction, it disagrees with Defendants' position that having an arbitrator decide in the first instance whether class arbitration is available is an irreparable harm on the facts here. First, the very Order that Defendants appeal from held that the availability of class arbitration is not a threshold question of arbitrability, but is instead one that should be decided by the arbitrator in the first instance. Thus, the Court has already made clear that it does not share the view that it is a *per se* irreparable harm for the arbitrator to make this determination. Regardless, this close question of

6

law does not tip the scales decidedly in Defendants' favor. Second, even assuming this Court is wrong on this question of law, Defendants will not be irreparably harmed without a stay. If they win on appeal after an arbitrator has ruled that class arbitration is available under the parties' agreement, they will be able to return to this Court to litigate the issue anew. If the arbitrator rules that class arbitration is not available under the parties' agreement before the Second Circuit issues a ruling, they will have prevailed on their underlying contention. And if they lose on appeal, they will have expended no more resources in arbitration than they would have expended otherwise had they not appealed this Court's Order. Thus, of these three possibilities, the worst case scenario results only in the waste of Defendants' resources litigating an issue in arbitration that may be overturned in this Court following remand of their appeal from the Second Circuit. Such a possible expenditure of resources is not an irreparable harm; it is a harm that is attendant to most litigation. Therefore, although Plaintiffs are unlikely to be harmed by a stay, Defendants' possible expenditure of additional resources is not enough to tip the scales decidedly in their favor as required by the Second Circuit's "serious questions" framework.

### C.     The Public Interest

The Court concludes that the final factor, where the public interest lies, only weakly favors a stay. First, no judicial resources will be saved with a stay. *Sutherland*, 856 F. Supp. 2d at 644 ("[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary." (citing *Payne v. Jumeirah Hosp. & Leisure (USA), Inc.*, 808 F. Supp. 2d 604, 604 (S.D.N.Y. 2011)). In fact, as noted above, if arbitration continues as scheduled and the AAA panel determines class arbitration is unavailable to Plaintiffs, judicial resources may be saved in the absence of a stay. Second, if the Second Circuit concludes on appeal that the availability of class arbitration is a threshold question of arbitrability for a court to decide, the only resources that may be wasted are private arbitral resources. Although courts have held that "[t]here is a significant public interest in conserving judicial *and arbitration* resources by preventing duplicative proceedings," *Morgan Stanley & Co. v. Seghers*, 10 Civ. 5378 (DLC), 2010 U.S. Dist. LEXIS 107686, at *22 (S.D.N.Y.

Oct. 8, 2010) (emphasis added), there is only a small possibility that arbitration resources will be wasted if both the arbitral panel concludes class arbitration is available and the Second Circuit reverses this Court's decision. Thus, by possibly saving some arbitral resources, a stay may, at most, have a modestly positive effect on the public interest.

### III. CONCLUSION

The Court agrees that there are serious questions going to the merits of Defendants' appeal, but it is unclear whether the appeal is procedurally proper, the balance of hardships does not tip decidedly in Defendants' favor, and a stay will only modestly serve the public interest. Therefore, Defendants' motion to stay this Court's Opinion and Order dated May 29, 2014 is DENIED.

This resolves Dkt. No. 270.

SO ORDERED.

Dated: Aug. 27, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge