```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 0 2 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE A2P SMS ANTITRUST LITIGATION

MASTER FILE: 12-CV-2656 (AJN)

---

THIS DOCUMENT RELATES TO:
ALL ACTIONS

ORDER

---

ALISON J. NATHAN, District Judge:

At its heart, this case is an antitrust action, but the last two plus years of litigation have been limited to threshold disputes. In particular, the question of who decides—the court or the arbitrator—whether an arbitration agreement permits class arbitration. When the parties were last before the Court, the Carrier Defendants[1] and CTIA-The Wireless Association (collectively, the "Moving Defendants") sought a stay pending appeal of the Court's May 29, 2014 Order holding that whether the parties' agreement required class or individual arbitration was a decision for the arbitrator, not the Court, to decide. The Court denied that request. *In re A2P SMS Antitrust Litig.*, No. 1:12-CV-2656, 2014 U.S. Dist. LEXIS 120323, at *4 (S.D.N.Y. Aug. 27, 2014). Now, after the Second Circuit dismissed the Moving Defendants' appeal pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(B), for lack of jurisdiction, the Moving Defendants have returned to this Court seeking certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons stated herein, the Moving Defendants' request is GRANTED.

---

[1] The Carrier Defendants are AT&T Mobility LLC; Cellco Partnership d/b/a Verizon Wireless; Sprint Nextel Corporation; T-Mobile USA, Inc.; and U.S. Cellular Corporation.

1

I.  **BACKGROUND**

The Court assumes familiarity with its Orders dated September 13, 2013, *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465 (S.D.N.Y. 2013) ("September 2013 Order"); May 29, 2014, *In re A2P SMS Antitrust Litig.*, No. 12 CV 2656 (AJN), 2014 U.S. Dist. LEXIS 74062 (S.D.N.Y. May 29, 2014) ("May 2014 Order"); and August 27, 2014, *In re A2P SMS Antitrust Litig.*, No. 1:12-CV-2656, 2014 U.S. Dist. LEXIS 120323 (S.D.N.Y. Aug. 27, 2014) ("August 2014 Order"). The procedural background described here is intended only to provide context for the present motion.

On April 5, 2012, Plaintiffs Club Texting, Inc.,[2] iSpeedbuy LLC, and TextPower, Inc. (collectively, "Plaintiffs") commenced a putative class action against the Moving Defendants as well as the following additional defendants: Wireless Media Consulting, Inc. (d/b/a WMC Global); Air2Web, Inc.; Ericsson Inc.; Sybase, Inc.; SoundBite Communications, Inc.; 2ergo Americas, Inc.; Syniverse Technologies, LLC; Vibes Media, LLC; 3Cinteractice, LLC; mBlox, Inc.; and OpenMarket, Inc. (collectively, "Defendants"). Dkt. No. 1. On September 17, 2012, Plaintiffs filed their Second Consolidated Amended Complaint. Dkt. No. 138.

All Defendants then filed motions to compel arbitration or to dismiss Plaintiffs' Complaint. In the September 2013 Order, the Court granted the Moving Defendants', WMC Global's, and Open Market, Inc.'s motions to compel arbitration of Plaintiffs' claims against them, and the Court also compelled Plaintiff Club Texting to arbitrate its dispute with Defendant mBlox, Inc. 972 F. Supp. 2d at 472. Although some Defendants moved to compel arbitration on an individual basis, the Court did not specify whether its Order compelled arbitration on an individual or class basis. In light of the facts and circumstances of the case and the remaining

---

[2] On December 12, 2014, Shahriyar Neman and David Hobeich were substituted for Club Texting, Inc. Dkt. No. 289.

2

non-arbitrable claims against the so-called Aggregator Defendants,[3] the Court concluded that a stay rather than a dismissal was appropriate with respect to the Moving Defendants, WMC Global, and Open Market, Inc. The Court also stayed the remainder of the action, namely the non-arbitrable claims against the Aggregator Defendants (other than mBlox, Inc.). The then-pending motions to dismiss were administratively denied without prejudice to re-filing. *Id.* at 500.

On January 28, 2014, Plaintiffs filed a demand for class arbitration with the American Arbitration Association ("AAA"). Dkt. No. 237 Ex. 1.C. On February 11, 2014, the Moving Defendants filed a motion in this Court seeking an order "compelling individual arbitration of Plaintiffs' claims" pursuant to §§ 3 and 4 of the FAA, 9 U.S.C. §§ 3, 4. The parties stipulated that the arbitration would be stayed pending resolution of that motion. Dkt. No. 241.

On May 29, 2014, the Court declined to issue an order denying or compelling class arbitration of Plaintiffs' claims. Instead, the Court held that whether the claims could be brought as a class or must be brought on an individual basis is a matter for the arbitrator to resolve, not the Court. May 2014 Order, 2014 U.S. Dist. LEXIS 74062, at *31-32.

In late June 2014, the Moving Defendants filed a notice of appeal of the May 2014 Order. Specifically, the Moving Defendants sought an interlocutory appeal pursuant to § 16(a)(1)(B) of the FAA. On July 2, 2014, the Moving Defendants filed a motion to stay the Court's May 2014 Order pending resolution of their appeal to the Second Circuit. Dkt. No. 270. On August 27, 2014, that motion was denied. August 2014 Order, 2014 U.S. Dist. LEXIS 120323, at *15-16. On November 25, 2014, the Second Circuit dismissed the Moving Defendants' appeal for lack of

---

[3] The Aggregator Defendants are Air2Web, Inc.; Ericsson Inc.; Sybase, Inc.; SoundBite Communications, Inc.; 2ergo Americas, Inc.; Syniverse Technologies, LLC; Vibes Media, LLC; and 3Cinteractice, LLC. mBlox, Inc. and OpenMarket, Inc. are also aggregators, but they filed motions that were distinct from the general class of Aggregator Defendants.

3

jurisdiction, concluding that this Court's May 2014 Order "does not constitute an appealable order 'denying a petition . . . to order arbitration to proceed' as contemplated under" § 16(a)(1)(B). Dkt. No. 291.[4] The Moving Defendants then filed the present motion seeking certification of an interlocutory appeal pursuant to § 1292(b).

## II.  DISCUSSION

Section 1292(b) permits a district court to certify an otherwise non-final order for interlocutory appeal if the district court is "of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Application of these three requirements is guided by the Second Circuit's admonition that "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). The three § 1292 requirements are sufficiently satisfied here. Moreover, the weighty question posed on appeal and its effect on the conduct of this litigation present the exceptional circumstances necessary to certify an interlocutory appeal.

### A.  Substantial Ground for Difference of Opinion

The Court begins its analysis with the second requirement of § 1292(b), which is not in dispute. This prong "is met when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *In re Enron Corp.*, No. 06 Civ.

---

[4] The Second Circuit issued its mandate dismissing the Moving Defendants' appeal pursuant to § 16(a)(1)(B) on December 22, 2014. Dkt. No. 291.

4

7828(SAS), 2007 U.S. Dist. LEXIS 70731, at *6 (S.D.N.Y. Sept. 24, 2007)). Furthermore, "the district court must 'analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute.'" *Id.* (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Although Plaintiffs oppose the Moving Defendants' motion for certification of an interlocutory appeal, they concede that this second requirement of § 1292(b) is easily satisfied here. Opp'n Br. at 5 n.4.

The Court has already twice observed that the issue of who makes the initial determination regarding class arbitration is particularly difficult precisely "because there is no controlling Supreme Court or Second Circuit precedent on point and the only available guiding precedent does not cut decisively in either direction." August 2014 Order, 2014 U.S. Dist. LEXIS 120323, at *9. Moreover, "since [the Court's May 2014 Order] was handed down, the Third Circuit joined the Sixth Circuit in reaching a conclusion contrary to this Court's by holding that 'whether an agreement provides for classwide arbitration is a "question of arbitrability" to be decided by the District Court.'" *Id.* (quoting *Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 332 (3d Cir. 2014)); *see also Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). As discussed at length in the Court's May 2014 Order, parties on either side of the issue may draw support from competing opinions of the Supreme Court and lower court precedent across the country. 2014 U.S. Dist. LEXIS 74062, at *16-31. The Court remains convinced that the Supreme Court's plurality holding in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), provides persuasive guidance on the question, but it continues to recognize that there are compelling arguments contrary to its ruling that create a substantial ground for dispute.

5

## B. Controlling Question of Law

Admittedly, the question at issue here is not the model of a "controlling question" because it will not terminate this action. But courts, while often emphasizing the likelihood of termination in determining whether a question is controlling, have long recognized that the possibility of termination is not the stand-alone test for a "controlling question" under § 1292(b). *See, e.g., Klinghoffer*, 921 F.2d at 24 ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." (citations omitted)). As Judge Posner cogently observed, "[t]he cases do not interpret the term ['controlling'] literally. A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sakaogan Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996); *see also In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (Friendly, J.) (noting that a "controlling question of law" under § 1292(b) "include[s] a procedural determination that may importantly affect the conduct of an action.").[5] More generally, courts in this Circuit have noted that

> [i]n determining whether a controlling question of law exists[,] the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases.

*Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 U.S. Dist. LEXIS 139594, at *4 (S.D.N.Y. Sept. 17, 2013) (quoting *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d

---

[5] At the time of Judge Friendly's writing, § 1292(b) was often used to certify interlocutory appeals of orders granting or denying class certification, perhaps the quintessential example of a procedural determination that may importantly affect the conduct of an action but not (necessarily) terminate it. *See* 16 Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 3931 at 515 (3d ed. 2012) ("Class-action rulings once provided special reasons for § 1292(b) appeals, but the pressure on § 1292(b) has been greatly reduced by adoption of Civil Rule 23(f), which establishes a parallel system for permissive appeal from orders granting or denying class-action certification under Rule 23."). The question at hand is one step removed from an order granting or denying class certification.

6

567, 570 (S.D.N.Y. 2001) (internal quotation marks omitted)).[6] In addition, the question of law certified on interlocutory appeal "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records, LLC*, 972 F. Supp. 2d at 551 (quoting *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007) (internal quotation marks omitted)).

First, the question certified for interlocutory appeal undoubtedly involves "a procedural determination that may importantly affect the conduct of [this] action." *In re Duplan Corp.*, 591 F.2d at 148 n.11. A reversal of the May 2014 Order will require this Court to decide whether the Plaintiffs' claims against the Moving Defendants may proceed as a class in arbitration, which will shape the remainder of the litigation. In addition, the Plaintiffs and Moving Defendants are currently proceeding to litigate their claims in arbitration. This will first require briefing and a hearing on whether the arbitration agreement permits class arbitration, which will result in an interim award from the arbitration panel (the "Clause Construction Award"). Reply at 3-4; Arenson Decl. ¶ 9. The parties will then be permitted to seek confirmation or vacatur of that interim award before this Court, Arenson Decl. ¶ 9, and, unsurprisingly, both parties have indicated that they will do so if they lose the arbitration panel's initial determination, Opp'n Br. at 5; Reply at 1, 3-4. The arbitration panel might then stay the proceedings pending resolution of the confirmation or vacatur motion. Arenson Decl. ¶ 9.[7] If this Court's May 2014 Order is

---

[6] A leading treatise similarly notes that there is a range, rather than a dichotomy, between a question that is definitely controlling and one that is not: "There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings. At the other end of the spectrum, there is little doubt that a question is not controlling if the litigation would be conducted in the same way no matter how it were decided, or if it is a matter of merely formal procedure that can readily be accommodated to whatever ruling is made." Wright, *supra*, § 3930 at 496-97.

[7] Assuming the panel determines that class arbitration is available, there will be a second round of briefing and a hearing on whether to certify a class, which will similarly result in an interim award that the parties might seek to confirm or vacate before this Court. Opp'n Br. at 5 n.5; Reply at 4.

reversed, any arbitration proceedings that have taken place would need to be vacated because any initial determination reached by the arbitrators regarding the availability of class arbitration would have been in excess of their powers. And if this Court's order is affirmed, any cloud hanging over the arbitration panel's initial determination would be lifted, thereby removing a basis for vacating that determination in this Court.

Second, the Court's May 2014 Order presents a pure question of law: who decides—the court or the arbitrator—whether an arbitration agreement permits class arbitration? This is a question of law that can be decided quickly and cleanly without having to study the record. The only issue specific to the facts of this case that was raised in the Court's May 2014 Order is whether Plaintiffs waived the argument that the arbitrator should decide the availability of class arbitration. 2014 U.S. Dist. LEXIS 74062, at *9-14. But the Court is not certifying this waiver question for interlocutory appeal. Moreover, the Moving Defendants are not seeking to have this tangential question certified, and it would be hypocritical for them to raise a waiver argument on interlocutory appeal that they themselves may have waived by failing to identify it here. *Cf. Sakaogan Gaming Enter. Corp.*, 86 F.3d at 658 (finding waiver where party moving to certify an interlocutory appeal "represented that the question addressed by the court's ruling was indeed a controlling question of law, rather than merely a ruling on an alternative ground"). Of course, the Second Circuit "may address any issue fairly included within the certified order." *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 205 (1996). But even this tangential issue does not require extensive examination of the record in this case and, should the Second Circuit choose to reach this issue on its own accord, the Second Circuit's factual review would not need to extend beyond the parties' briefs submitted as part of the September 2013 Order.

8

In short, while a reversal of this Court's order would not terminate the action, the Second Circuit's decision on this pure question of law would settle who makes the initial determination regarding the availability of class arbitration, which, in turn, would materially affect the course of the remainder of the litigation. *Cf. Sakaogan Gaming Enter. Corp.*, 86 F.3d at 659 ("If TMI succeeds in this appeal, the issue of sovereign immunity will be removed from the case, and it is [this] issue that is keeping the case from being decided on the basis of the arbitration award."). Although this factor is certainly a close call, the Court concludes that it is sufficiently satisfied for § 1292(b) purposes.

### C. Material Advancement of the Ultimate Termination of the Litigation

The third prong of the § 1292(b) analysis concerning material advancement of the ultimate termination of the litigation overlaps with the issue of whether a controlling question of law is presented. *Capitol Records, LLC*, 972 F. Supp. 2d at 551. This requirement "is met when an intermediate appeal 'promises to advance the time for trial or to shorten the time required for trial.'" *Id.* (quoting *Transp. Workers Union of Am. v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)). In addition,

> a district court must consider the institutional efficiency of the federal judiciary when considering an application for Section 1292(b) certification. The efficiency of both the district court and the appellate court should be considered. Balancing these efficiencies, the benefit to the district court of obviating needless trial time must outweigh the inefficiency to the Court of Appeals in hearing multiple appeals in the same case.

*In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, M 21-95, 2005 U.S. Dist. LEXIS 16130, at *10-11 (S.D.N.Y. Aug. 9, 2005); *see also* Wright, *supra*, § 3930 at 480 ("The three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal."). Two circumstances of this case are of particular relevance to this last requirement.

9

First, regardless of whether the Court certifies an appeal now, the Second Circuit will be confronted with an appeal on this precise issue *prior* to any final judgment in this action. This is because both parties have made clear that, if they are the losing party in the clause construction proceeding currently underway in arbitration, they will seek to vacate the Clause Construction Award before this Court. The losing party of that determination will almost certainly appeal that decision to the Second Circuit, which will be an appeal taken by right pursuant to 9 U.S.C. § 16(a)(1)(D), which permits an appeal from an order "confirming or denying confirmation of an award or partial award," or 9 U.S.C. § 16(a)(1)(E), which permits an appeal from an order "modifying, correcting, or vacating an award." A reversal of this Court's May 2014 Order would moot that second appeal, and an affirmance of the Order would likely obviate that second appeal or, at a minimum, substantially narrow the grounds on which it rests. As the arbitration process described in Section II.B. makes clear, the arbitration will only proceed in fits and starts, with successive rounds of motions to vacate or confirm interim arbitration awards, until the question certified for interlocutory appeal is resolved.

Second, resolving the question whether class arbitration is available will have a momentous effect on this antitrust action, but that question cannot itself be resolved until it is definitively determined who may resolve it. Courts and commentators have long recognized that

> [t]he determination whether to certify a class can effectively conclude the action, one way or the other. Refusal to certify may cause the plaintiff to abandon claims that do not justify the costs of solo litigation. Certification may coerce the defendant into settling questionable claims for fear of catastrophic loss.

Wright, *supra*, § 3931.1 at 537. Indeed, since this litigation began, Plaintiffs have vigorously stated that, as a practical matter, their claims cannot proceed on an individual basis. *See, e.g.,* September 2013 Order, 972 F. Supp. 2d at 495. Resolving who makes the initial determination

regarding the availability of class arbitration is necessary for the parties to have a final answer to this important question, which is likely to affect the overall length of this litigation.

In opposition, Plaintiffs rely heavily on Judge Failla's recent decision in *Murray v. UBS Securities, LLC*, No. 12 Civ. 5914 (KPF), 2014 U.S. Dist. LEXIS 46009 (S.D.N.Y. Apr. 1, 2014). Although that action also involved a motion to certify an interlocutory appeal of an order compelling arbitration, the similarities with the present case end there. That case did not involve the availability of class arbitration, nor did it implicate a question for which there was such divergent and competing authority. Despite these dissimilarities, Plaintiffs seize on Judge Failla's statement that "allowing certification of the Court's order would be inconsistent with the 'national policy favoring arbitration.'" *Id.* at *23 (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011)).[8] The gist of their argument is that no order compelling arbitration may be certified for interlocutory appeal under § 1292(b), but that argument ignores the FAA's explicit recognition that an order compelling arbitration may not be appealed "*[e]xcept* as otherwise provided in section 1292(b)." 9 U.S.C. § 16(b) (emphasis added); *see also Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) ("A contrary holding would render meaningless the acknowledgment in 9 U.S.C. § 16(b) that an interlocutory order pursuant to the

---

[8] In denying the certification motion, Judge Failla further noted that "[r]eversal . . . would not terminate the action, but rather would return the action to this Court for litigation. To be sure, reversal could affect the 'conduct' of the action by eliminating the arbitration, but such a consequence is not sufficient to warrant certification. Indeed – and as certainly contemplated by Congress in enacting, and then clarifying, Section 16(b) – courts in this Circuit have denied motions for certification where reversals of the orders at issue would have allowed the parties to forgo arbitration entirely." *Id.* at *11-2 (citing *Levitt v. Lipper Holdings, LLC*, No. 03 Civ. 266 (RO), 2006 U.S. Dist. LEXIS 18689, at *5-6 (S.D.N.Y. Apr. 12, 2006); *Ryan, Beck & Co. LLC v. Fakih*, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003); *Martens v. Smith Barney, Inc.*, 238 F. Supp. 2d 596, 602 (S.D.N.Y. 2002); *In re XO Commc'ns, Inc.*, No. 03 Civ. 1898 (DC), 2004 U.S. Dist. LEXIS 2879, at *14-16 (S.D.N.Y. Feb. 26, 2004)). The Court does not read Judge Failla's opinion as narrowly as Plaintiffs suggest, but, in any event, it was clear that she was concerned with parties attempting to circumvent the FAA's prohibitions in the absence of the exceptional circumstances that § 1292(b) requires.

Federal Arbitration Act may in some circumstances satisfy the requirements of 28 U.S.C. § 1292(b).").

Regardless, unlike *Murray* and the cases cited therein, the issue presented for certification does not address the availability of arbitration, and, at this stage, neither party is seeking to avoid arbitration. The question is what form that arbitration will take and, more immediately, who must make that determination. Permitting interlocutory appeal on that question will not undermine the federal policy favoring arbitration. Nor will permitting interlocutory appeal significantly delay the arbitration proceedings because both parties acknowledge that the arbitration panel is likely to stay the arbitration proceedings pending motion practice in this Court regarding confirmation or vacatur of the Clause Construction Award. Based on the likelihood that the parties' will appeal any such order from this Court on that issue, the arbitration proceedings are unlikely to proceed beyond the Clause Construction Award before the Second Circuit is confronted with the certified question one way or the other.

## III. CONCLUSION

The current posture of the proceedings and the consequential question presented on appeal provide the exceptional circumstances necessary to certify an interlocutory appeal. The Court's May 2014 Order held that the arbitrator must decide in the first instance whether class arbitration is available. That decision was made against a backdrop of inconclusive Supreme Court authority, non-existent Second Circuit authority, and divided lower court authority across the country. Since that decision was handed down, the Third Circuit joined the Sixth Circuit in reaching a conclusion that is directly contrary to this Court's holding. There is thus substantial ground for difference of opinion on the question presented for interlocutory appeal. It is also a clean question of law that can be decided without reference to or development of the factual

record. Finally, although a reversal of this Court's order will not terminate the action, it will have a substantial effect on the course of this litigation. A reversal will require vacating any arbitration proceedings to date and will also require the Court to make a determination that will greatly affect the conduct and length of the litigation.

As noted, if the Second Circuit agrees to hear the appeal, it "may address any issue fairly included within the certified order." *Yamaha Motor Corp., USA*, 516 U.S. at 205. But the Second Circuit has also instructed district courts that "it is helpful for [them] to frame the controlling questions of law that the order involves." *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1157 (2d Cir. 1986). Therefore, the Court hereby certifies its May 29, 2014 Order, Dkt. No. 251, for interlocutory appeal and frames the following question of law that the order involves: who decides—the court or the arbitrator—whether an arbitration agreement permits class arbitration?

This resolves Dkt. No. 287.

SO ORDERED.

Dated: March 2, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge

13